UNITED STATES DISTRICT COURT
for the
EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| MATTHEW STANFORD<br>Plaintiff | )<br>)<br>) | |
| v. | )<br>) | |
| THE UNITED STATES<br>Defendant | )<br>)<br>) | Civil Action No. |
| SERVE: U.S. Attorney for E.D. KY<br>Attn: Civil Process Clerk<br>260 W. Vine Street, Ste. 300<br>Lexington, KY 40507 | )<br>)<br>)<br>)<br>) | |

Attorney General of the United States
Department of Justice, Room 5111
10th & Constitution Ave., NW
Washington, D.C. 20530

**COMPLAINT FOR DAMAGES UNDER
THE FEDERAL TORT CLAIMS ACT**

Matthew Stanford, by and through his attorneys, William Driscoll and Christopher Evensen, and for his cause of action against the United States, states as follows:

**I. JURISDICTION, VENUE AND CONDITION PRECEDENT**

1. The Plaintiff, Matthew Stanford, is a resident of Bucks County, Pennsylvania.

2. The claims asserted herein against the United States are brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b)(1) and 28 U.S.C. §2671 *et seq.*, for money damages as compensation for personal injuries that were caused by the negligent acts and omissions of employees of the United States while acting in the scope of their employment, under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the laws of the Commonwealth of Kentucky.

3. Venue is proper in that the events, acts and omissions that give rise to Plaintiff's claims occurred in Knox County which is located in the Eastern District of Kentucky.

4. Plaintiff has fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act.

5. Specifically, on April 27, 2010, Plaintiff served timely notice of his claims against the United States Department of the Army, by forwarding a signed, completed SF-95 with supporting documentation. The SF-95 is attached hereto as Exhibit "A."

6. The Department of the Army acknowledged that it received the SF-95 and supporting documentation at its Fort Knox Claims Office on April 28, 2010.

7. Pursuant to the Fort Knox Claim Office's request, Plaintiff submitted additional documentation, as well as legal memorandum on various issues.

8. In a letter dated February 9, 2011, Plaintiff advised the Fort Knox Claim Office that all supporting documentation has been forwarded, and that his "FTCA claim now stands submitted for decision."

9. As of this date, the Fort Knox Claims Office has neither denied Plaintiff's FTCA claim, nor made a settlement offer.

## II. ALLEGATIONS OF FACT

10. The claims herein arise from an accident that occurred at the Harold Disney Training Center located in Knox County, Kentucky on July 23, 2009.

11. The Harold Disney Training Center is a military facility occupied and operated by employees of the United States.

12. At the time of the accident, Matthew Stanford was a 24 year old graduate from Penn State University who was considering an aviation career in the U.S. Marine Corp.

13.  In May of 2009, Stanford had discussions with a Kentucky corporation, U.S. Army Cadet Corp, Inc. ("USAAC"), about participating as a Cadet Instructor / Camp Counselor at USAAC's 10 week Summer program in Millerburg, Kentucky.

14.  In June of 2009, Stanford began working at USAAC's Training Center.

15.  As a Cadet Instructor, Stanford led the cadets, youths ages 12-18, through training exercises, instructed and participated in activities and provided supervision.

16.  As part of his job, Stanford instructed and participated in physical training, and was expected to lead by example.

17.  On July 21, 2009, Stanford and other USACC adults accompanied a large group of cadets to the Harold Disney Training Center for three days of training exercises and activities.

18.  During the three day trip, Stanford and the USACC group stayed in the military facility's barracks.

19.  The USACC group was on the premises of the Harold Disney Training Center with the knowledge and permission of the facility's Non-Commissioned Officer In Charge, an employee of the United States.

20.  Other employees of the United States who were assigned to the Harold Disney Training Center also had knowledge that the USACC group was staying at the facility.

21.  In fact, an instructor with USACC was given the keys to the facility, as the land is not open to the public.

22.  In addition to Ground Combat Tactical Trainer (shoot / don't shoot simulations), the Harold Disney Training Center has a Grenade Course and a "Confidence Course" (obstacle course).

23. On July 23, 2009, Stanford and the other USACC instructors walked a large group of cadets over to the "Confidence Course", an obstacle course consisting of approximately 21 obstacles.

24. The USACC instructors were running the youth through the obstacle course in groups of 10-15, and were spread out along the course.

25. Stanford was assigned to an obstacle called "Stairway to Heaven."

26. When the last group of youth passed through, Stanford was instructed by his superior to join the last group and accompany them through the remaining obstacles.

27. At around 2:00 p.m., Stanford and his group arrived at a "Zip Line", which was approximately the 15th obstacle on the course.

28. The youth began to ascend a two-tiered platform to a "launch" point approximately 18 feet off the ground.

29. The Zip Line spanned approximately 135 feet and was strung over a stretch of uncleared land which included rocks and tree stumps.

30. There was no safety netting underneath the "Zip Line."

31. There was no safety harness or belay device to prevent users of the "Zip Line" from falling to the ground.

32. Several youth in the group of 10-15 went down the "Zip Line" without incident.

33. Stanford began to go down the "Zip Line" by taking hold of the handle that hung below the trolley / pulley device, and "launching" from the elevated platform.

34. Stanford fell to the ground and suffered serious and permanent injuries.

35. Specifically, Stanford suffered a fractured hip and fractured cervical spine, resulting in Quadriplegia.

36. Stanford was transported by helicopter to the University of Kentucky Hospital where he was hospitalized for several weeks.

37. Stanford was then transferred to Moss Rehab Facility where he was treated for several months.

38. Currently, Stanford needs daily assistance from a nurse to get out of bed, to bathe, to get dressed and to use the bathroom.

### III. FAILURE TO WARN / INADEQUATE WARNING

39. Unbeknown to Stanford and the youths in his group, the Zip Line was unfinished and not ready to be used.

40. The Non-Commissioned Officer in Charge of the Harold Disney Training Center knew that the Zip Line was unfinished and not ready to be used.

41. The other federal employees at the Harold Disney Training Center knew that the Zip Line was unfinished and not ready to be used.

42. Although the Zip Line was unfinished and not ready to be used, there were no warning or caution signs, no "Out of Order" signs, no yellow tape, or any indication that the device was unfinished and not ready for use.

43. The Non-Commissioned Officer in Charge of the Harold Disney Training Center knew that the USACC group was using the obstacle course.

44. The other federal employees at the Harold Disney Training Center knew that the USACC group was using the obstacle course.

45. The Non-Commissioned Officer in Charge of the Harold Disney Training Center knew that the Zip Line was not safe to use.

46. The other federal employees at the Harold Disney Training Center knew that the Zip Line was not safe to use.

47. The Non-Commissioned Officer in Charge of the Harold Disney Training Center failed to warn the USACC group that the Zip Line was unfinished and not safe to use.

48. In the alternative, the Non-Commissioned Officer in Charge of the Harold Disney Training Center failed to adequately warn the USACC group that the Zip Line was unfinished and not safe to use.

49. The Non-Commissioned Officer in Charge of the Harold Disney Training Center failed to ensure that each and every member of the USACC group, including Stanford, were told that the Zip Line was unfinished and not safe to use.

50. The other federal employees at the Harold Disney Training Center failed to warn the USACC group that the Zip Line was unfinished and not safe to use.

51. In the alternative, the other federal employees at the Harold Disney Training Center failed to adequately warn the USACC group that the Zip Line was unfinished and not safe to use.

52. The other federal employees at the Harold Disney Training Center failed to ensure that each and every member of the USACC group, including Stanford, were told that the Zip Line was unfinished and not safe to use.

53. The USACC group that arrived on July 21, 2009 never received a safety briefing or orientation on the "Confidence Course."

54 By failing to warn, the federal employees referenced above acted negligently.

55. In the alternative, by failing to adequately warn, the federal employees referred to acted negligently.

56. Such negligence was the proximate cause of the injuries suffered, and damages incurred by Stanford.

57. The negligence alleged herein is actionable under the laws of the Commonwealth of Kentucky and entitle Stanford to assert a liability claim and recover compensatory damages.

### IV. FAILURE TO ACT REASONABLY / FAILURE TO GUARD

58. Stanford adopts each allegation set forth in the preceding count, entitled "Failure to Warn / Inadequate Warning" and incorporates each by reference as if set forth in full.

59. The federal employees failed to exercise reasonable care under the circumstances.

60. The federal employees should have anticipated that persons in the USACC group would attempt to use the Zip Line.

61. The federal employees understood, or should have understood, that such usage carried a considerable risk of serious bodily injury.

62. The federal employees had the duty to take the necessary precautions to eliminate or reduce the risk of harm that existed.

63. The federal employees breached this duty.

64. Although the Zip Line was unsafe, access to the obstacle was not blocked, access to the platforms was not blocked, and the trolley / pulley device was not locked or disabled.

65. By failing to take precautions, the federal employees failed to exercise reasonable care and, accordingly, acted negligently.

66. Further, due to his training and experience, the Range Officer at the Harold Disney Training Center understood the risk of harm, and severity of harm, associated with the obstacles on the "Confidence Course" and that the relevant Field Manual required the "Zip Line" to be equipped with safety equipment, such as a safety harness and netting.

67. The Range Officer had a higher duty to take precautions.

68. The Range Officer, an employee of the United States, breached this duty and, thus, acted negligently.

69. The negligence of these federal employees was the proximate cause of the injuries suffered, and damages incurred by Stanford.

70. The negligence alleged herein is actionable under the laws of the Commonwealth of Kentucky and entitle Stanford to assert a liability claim and recover compensatory damages.

## IV. NEGLIGENT DESIGN AND CONSTRUCTION

71. The Zip Line was designed by employees of the United States acting in the scope of their employment.

72. The Zip Line was negligently designed.

73. Among other things, the design lacks any safety harness or fall arrest system.

74. The Zip Line was partially assembled and constructed by employees of the United States acting in the scope of their employment.

75. The Zip Line was negligently assembled and constructed.

76. Among other things, the metal handle below the trolley / pulley device is inappropriately fastened, which allows the user to be spun around, and it has no grips.

77. The negligent design and construction of the Zip Line was a substantial factor in causing Stanford's injuries and damages.

78. The negligence alleged herein is actionable under the laws of the Commonwealth of Kentucky and entitle Stanford to assert a liability claim and recover compensatory damages.

## V. PREMISES LIABILITY

79. The Harold Disney Training Center is occupied and operated by employees of the United States.

80. The Harold Disney Training Center is a federal installation over which federal personnel exercise day-to- day control.

81. As such, the federal employees had the duty to maintain the premises in a reasonably safe condition.

82. The federal employees also had the duty to warn of hidden dangers.

83. Further, the federal employees had superior knowledge regarding the risk of harm associated with various obstacles, including the unfinished Zip Line.

84. Accordingly, the federal employees had a higher duty regarding the maintenance of the premises.

85. The federal employees at the Harold Disney Training Center breached their duties.

86. As a result of the breach of these duties, Stanford suffered serious and permanent injuries and incurred the damages discussed below.

87 The negligence alleged herein is actionable under the laws of the Commonwealth of Kentucky and entitle Stanford to assert a liability claim and recover compensatory damages.

## VI. INJURIES AND DAMAGES

88. As discussed above, Stanford's fall was a direct result of the negligence of federal employees acting in the scope of their employment.

89. As a result of the fall, Stanford has endured physical pain and suffering, and will likely endure physical pain and suffering in the future.

90. As a result of the fall, Stanford has suffered mental anguish, and will likely suffer mental anguish in the future.

91. As a result of the fall, Stanford has incurred medical, nursing, hospital, and therapy expenses in excess of $1,000,000.00, and will likely incur additional such expenses in the future.

92. As a result of the fall, Stanford has incurred lost wages, and his ability to labor and earn money and corresponding employee benefits has been permanently impaired.

93. As a result of the fall, Stanford has suffered a loss of his ability to engage in many of his usual activities and asserts a claim for Hedonic damages.

94. Stanford reserves the right to Amend this Complaint to include any other persons or entities that may bear a portion of liability for his injuries, and to add additional claims as discovery progresses.

## VII. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Matthew Stanford, is entitled to Judgment in his favor and against the United States as follows:

1. For Compensatory Damages for his physical pain and suffering, mental anguish, hospital, medical, nursing and therapy expenses, lost wages, and permanent impairment to his ability to labor and earn money and corresponding benefits;

2. For Court costs; and,

3. For any other legal or equitable relief to which he may be entitled.

S/ _____
William J. Driscoll
Christopher P. Evensen
6011 Brownsboro Park Blvd., Suite A
Louisville KY 40207
wdriscoll@driscollandassociates.com
chris@evensenlawoffice.com
(502) 587-1983
(502) 814-0227 (fax)
Counsel for Plaintiff